UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| VICTOR JORDAN, SR., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 3:24-cv-236 (VAB) |
| | : | |
| DEPARTMENT OF CORRECTIONS, | : | |
| *et al*, | : | |
| Defendants. | : | |

**INITIAL REVIEW ORDER**

Victor Jordan, Sr. ("Plaintiff"), a sentenced inmate located at Cheshire Correctional Institution ("Cheshire"), has filed a Fourth Amended Complaint under 42 U.S.C. § 1983. Fourth Amend. Compl., ECF No. 27. Mr. Jordan alleges "at least 48 defendants" violated his rights under federal law. *Id.* at 27.

For the reasons discussed below, the Fourth Amended Complaint is dismissed without prejudice to the filing of a Fifth Amended Complaint by **August 8, 2025**, seeking damages against the following Defendants identified in the Fourth Amended Complaint in their individual capacities on his Eighth Amendment deliberate indifference claim related to their alleged failure to decontaminate Mr. Jordan after he was allegedly pepper sprayed: Nurse Jane Ventrella, Captain Correia, Lieutenant Colella, Officers Rivera, Tardiff, Marquis, and Salgado, and Dr. Wolf, Officers Hunter, Haggerty, Casserino, Gourley, Izzo, L.P.N. Brennan, R.N. Maiya, Lieutenant Rios, Officers Martin, Pitts, Viski, and Cheney. He also may pursue again in a Fifth Amended Complaint, at least for now, his excessive force and failure to intervene claims related to his Eighth Amendment pepper spray claims.

This is Mr. Jordan's final opportunity to file an amended pleading in this case. If his Fifth Amended Complaint contains anything other than the allegations necessary to support these three

1

claims, the Eighth Amendment deliberate indifference claim, and the related excessive force and failure to intervene claims described above, and discussed further below, then that Fifth Amended Complaint in its entirety will be dismissed with prejudice.

All other claims are **DISMISSED with prejudice**.

## I. BACKGROUND[1]

On December 17, 2021, Captain Correia and Lieutenant Colella allegedly approached Mr. Jordan while he was in his cell at Cheshire. ECF No. 27 at 33. These two correctional officers allegedly accused Mr. Jordan of "[h]arassing their women" in the medical and mental health departments. *Id.* They allegedly told Mr. Jordan he needed to stop or he "would be in trouble." *Id.* Mr. Jordan allegedly filed a grievance related to the incident on the same date; Warden Jennifer Reis allegedly rejected it on March 7, 2022. *Id.*

On January 23, 2022, Mr. Jordan allegedly visited a friend's cell to retrieve a photo album. *Id.* at 34. Thirty minutes after retrieving the photo album from outside of his friend's cell, Lieutenant Cosette and Correctional Officers Miranda, Izzo, Barefoot, and Viski allegedly escorted Mr. Jordan to the Restrictive Housing Unit ("RHU") "by use of unnecessary force." *Id.* While being escorted to the RHU, Mr. Jordan allegedly observed Lieutenant Calender smirk at Correctional Officer Milling. *Id.* A couple weeks earlier,[2] Lieutenant Calender allegedly had also accused Mr. Jordan of harassing medical and mental health staff. *Id.* Mr. Jordan allegedly had told Lieutenant Calender that both he and this issue were "above her pay grade," and she allegedly responded, "o.k.[,] I got you, we will see about that." *Id.* at 35.

---

[1] While the Court does not set forth all facts alleged in Mr. Jordan's Fourth Amended Complaint, it summarizes his basic factual allegations here to give context to its rulings below.
[2] Mr. Jordan alleges that this conversation took place "a couple weeks after" he was escorted to the RHU, *see* ECF No. 27 at 34, but when read in the context of the rest of the complaint, it appears this conversation took place "a couple weeks *before*" Mr. Jordan was escorted to the RHU.

While in the RHU, correctional officers allegedly ordered Mr. Jordan to bend over and spread his buttocks. *Id.* Mr. Jordan allegedly refused, "cit[ing] PREA." *Id.* Correctional officers allegedly made Mr. Jordan put his clothes back on, forced him into a cell, stripped him by force, forced him to his knees and made him lean forward, forced him up, directed him to put his clothes back on, and then secured him in a cell. *Id.* Lieutenant Cosette allegedly told Mr. Jordan that he was placed in the RHU because he went into another inmate's cell. *Id.* Mr. Jordan allegedly told Lieutenant Cosette that this was "[b]ull shit," a "set up," and that he was not placed in the RHU in accordance with the prison's Administrative Directives. *Id*. Mr. Jordan allegedly told Lieutenant Cosette to look at the video and release him from the RHU before he had an anxiety attack. *Id.* at 36. Lieutenant Cosette allegedly responded that Mr. Jordan would have to "fight the [disciplinary report]." *Id*.

Mr. Jordan allegedly told the RHU unit officer, Correctional Officer Brewer, that he felt an anxiety attack coming on. *Id.* After thirty minutes passed, Mr. Jordan allegedly began pounding his head against the cell door window until his head started bleeding. *Id*. Mr. Jordan allegedly lost consciousness for a period. *Id.* Mr. Jordan allegedly called out to Officer Brewer for help, and other inmates allegedly began yelling at Officer Brewer, too. *Id.* Officer Brewer allegedly ignored their calls for help. *Id.* Mr. Jordan allegedly covered his cell window "out of protest." *Id.*

Officer Brewer allegedly came to Mr. Jordan's cell and summoned assistance. *Id.* Lieutenant Lapile and Lisa, a social worker, allegedly responded. *Id.* Mr. Jordan allegedly told Lieutenant Lapile and Lisa that he knew he was "set up" and should not have been placed in the RHU. *Id.* at 36–37. Mr. Jordan allegedly removed the covering from his window, sat on his bed, and then made threats to harm himself and the officers who placed him in the RHU. *Id.* at 37.

Lieutenant Lapile and Lisa then allegedly placed Mr. Jordan in full restraints for four hours. *Id*.
Mr. Jordan allegedly was later placed in in-cell restraints and "B.O.S." until the next day. *Id*.

On January 24, 2022, Mr. Jordan allegedly saw Dr. Wolf, a mental health provider. *See*
*id.* Mr. Jordan allegedly accused Dr. Wolf and her staff of setting him up. *Id.* Mr. Jordan
allegedly attempted to apologize to Dr. Wolf for what he did, and she removed Mr. Jordan from
"B.O.S." *Id.* Later that day, Mr. Jordan allegedly was issued disciplinary reports for self-
mutilation, threats, and "safety and security" for going into the other inmate's cell. *Id.* This
allegedly upset Mr. Jordan, and he allegedly again covered his cell door window "out of protest"
for receiving the "unjust" self-mutilation and "safety and security" tickets (he admits he "did
make threats"). *Id.*

Officer Marquis, Captain Correia, and Lieutenant Colella allegedly responded to Mr.
Jordan's cell. *Id.* at 37–38. Mr. Jordan allegedly told the officers why he had covered his cell
door window and that he believed Captain Correia and Lieutenant Colella were "partially
responsible" for the retaliation. *Id.* at 38. Mr. Jordan allegedly demanded to speak to the warden
or deputy warden. *Id.* The officers allegedly told Mr. Jordan that they were going to spray a
chemical agent, *id.*, which Mr. Jordan identifies in another part of the complaint as "SABRE
Red," a type of pepper spray. *Id.* at 29.

Mr. Jordan allegedly told the officers that he was asthmatic and asked them not to spray
the pepper spray. *Id.* at 38. Several correctional officers allegedly tried to get Mr. Jordan to
remove the cell door window covering. *Id.* Mr. Jordan allegedly refused. *Id.* After Nurse Jane
Ventrella allegedly indicated that Mr. Jordan did not have any "contraindications," Captain
Correia, Lieutenant Colella, and Officers Tardiff and Rivera allegedly sprayed an "enormous
amount of chemicals" into Mr. Jordan's cell while Officers Marquis and Salgado and Dr. Wolf

stood by. *Id.* Officers allegedly eventually removed Mr. Jordan from the cell after he became

compliant. *Id.* at 39. All those present—Nurse Ventrella, Captain Correia, Lieutenant Colella,

Officers Rivera, Tardiff, Marquis, Salgado, and Dr. Wolf—allegedly failed to decontaminate Mr.

Jordan after he was pepper sprayed. *Id.* at 38–39. Instead, officers allegedly placed Mr. Jordan in

in-cell restraints. *Id.* at 39.

On January 25, 2022, Dr. Wolf allegedly "downgraded" Mr. Jordan and took him off

"B.O.S." *Id.* at 40. Mr. Jordan allegedly again covered his door with a mattress, tied a sheet

around his neck and the door, and sat down, *id.*, in an apparent suicide attempt. *See id.* at 43

(stating he "attempted suicide"). Mr. Jordan allegedly awoke in Saint Mary's hospital in

Waterbury. *Id.* at 40. Doctor Jane Doe allegedly told Mr. Jordan that he would be transferred to

an in-patient facility and infirmary instead of being returned to Cheshire. *Id.* Mr. Jordan

allegedly was transferred to Bridgeport Correctional Center after his hospital visit. *See id.* at 41.

Mr. Jordan allegedly was transferred back to Cheshire on January 27, 2022. *See id.*

Lieutenant Torres allegedly informed Mr. Jordan on his arrival that he would be returned to the

RHU because of his pending disciplinary reports. *Id.* at 42. Mr. Jordan allegedly claims prison

staff were "indifferent" to him returning to the RHU, and that social workers Jennifer and

Brennan denied Mr. Jordan medication for his pain and mental health conditions to "get a rise

out of [him]." *Id.*

Correctional Officers allegedly placed Mr. Jordan in a cell in the RHU. *Id.* Mr. Jordan

allegedly argued with Officer Guerra about medication, and Officer Guerra allegedly told Mr.

Jordan he would not be receiving it. *Id.* Mr. Jordan allegedly covered his cell door window and

"trap" with a mattress, refusing to uncover it until he received his medication. *Id.* While it is

unclear from Mr. Jordan's Complaint precisely what followed next,[3] it appears that Lieutenants Rios, Pitts, and Wauthier and Officers Cheney, Haggerty, and Casserino allegedly released "multiple sprays" of pepper spray into Mr. Jordan's cell "for close to an hour non[-]stop." *Id.* at 43, 45–48. Mr. Jordan allegedly could not breathe, hyperventilated, and passed out as officers placed him in stationary restraints. *Id.* at 44. Mr. Jordan allegedly maintains that Correctional Officers Hunter, Haggerty, Casserino, Gourley, Izzo, L.P.N. Brennan, and R.N. Maiya did not decontaminate him, *id.* at 48, 50, 52–53, and that he was not given oxygen. *Id.* at 46. Mr. Jordan allegedly also claims several correctional officers stood by and failed to protect him from being pepper sprayed. *See id.* at 50–52.

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

---

[3] Due to the discursive structure of Mr. Jordan's narrative, it is unclear whether Mr. Jordan's complaint is referring to the pepper spraying incident that occurred on January 24, 2022, or if he is referring to a second pepper spraying incident on January 27, 2022. *See* ECF No. 27 at 43 (referring to "[t]he abnormal number of supervisors present during *this* incident." (emphasis added)). The Court will construe the allegations liberally to conclude there was a second pepper spraying incident on January 27, 2022. But this confusion underscores the importance of complying with Fed. R. Civ. P. Rule 8.

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted)); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

## III.    DISCUSSION

### A.    Rule 8 of the Federal Rules of Civil Procedure

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 further requires that "each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "The statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). "The statement should be short because '[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.'" *Id.* (quotation omitted). "Neither this Court, nor any party, should have to wade through endless pages of narrative to discern the causes of action asserted and the relief sought." *Fisch v. Consulate Gen. of Republic of Pol.*, No. 11 CIV. 4182 SAS, 2011 WL 3847398, at *2 (S.D.N.Y. Aug. 30, 2011). Yet, despite the Court's repeated admonishments to Mr. Jordan in this case and others, Mr. Jordan continues to place that burden on the Court and the Defendants.

After filing a 65-page Complaint (excluding exhibits), Compl., ECF No. 1, Mr. Jordan filed a 111-page Amended Complaint (excluding exhibits). Amend. Compl., ECF No. 15. The Court dismissed Mr. Jordan's Amended Complaint without prejudice because it did not comply with Rule 8. Order, September 9, 2024, ECF No. 18. The Court warned Mr. Jordan that it would dismiss a Second Amended Complaint with prejudice if it did not comply with Rule 8. *Id.*

Mr. Jordan then filed a 113-page Second Amended Complaint, Sec. Amend. Compl., ECF No. 19. Despite the Court's previous admonishment, *see* ECF No. 18, Mr. Jordan's Second

8

Amended Complaint exceeded the length of his non-compliant Amended Complaint. The Court again ordered Mr. Jordan to file a Third Amended Complaint that complied with Rule 8. Order, November 8, 2024. ECF No. 22. The Court warned Mr. Jordan that it would dismiss a Third Amended Complaint with prejudice if it did not comply with Rule 8. *Id.*

Mr. Jordan then filed a Third and Fourth Amended Complaint. Third, Fourth Amend. Compl., ECF Nos. 24, 27. Like Mr. Jordan's previous complaints, his 102-page Fourth Amended Complaint (scarcely shorter than previously filed complaints) is neither "short" nor "plain." And the allegations it contains are not "simple, concise, and direct." *See, e.g.*, note 2, *supra*; note 3, *infra*. "When a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial . . . or to dismiss the complaint." *Salahuddin*, 861 F.2d at 42 (internal citation omitted). "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.* "When the court chooses to dismiss, it normally grants leave to file an amended pleading that conforms to the requirements of Rule 8." *Id.*

The Court has twice granted leave "to file an amended pleading that conforms to the requirements of Rule 8," *see* ECF Nos. 18, 22, only to receive another complaint nearly as long and just as confusing as the first two complaints.[4] The Court may dismiss a prolix complaint where, as here, "leave to amend has previously been given and the successive pleadings remain prolix and unintelligible[.]" *Id.* (citing, *inter alia*, *Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.

---

[4] Mr. Jordan repeats his allegations against Defendants in his description of Defendants, the statement of facts, and in the "causes of action" section of his Fourth Amended Complaint. He also asserts multiple violations of federal law in each "cause of action" or claim (which are themselves largely repetitive). As a result, the structure of this Fourth Amended Complaint does not clearly identify the claims Mr. Jordan seeks to bring or the facts supporting each claim. This leaves the Court to attempt to discern claims from the non-conclusory facts Mr. Jordan alleges throughout his Fourth Amended Complaint—something courts or defendants should not be expected to do. *See Fisch*, *supra*, at *2.

1972) (per curiam) (final dismissal appropriate where the complaint was "a labyrinthian prolixity of unrelated and vituperative charges that defied comprehension" and the amended complaint failed to cure prolixity and incomprehensibility)).

And, while the Second Circuit's "preference for adjudication of cases on their merits rather than on the basis of formalities," *id.*, given the multiple opportunities provided to Mr. Jordan to comply with Rule 8 in this litigation, as well as others, *see, e.g.*, *Jordan v. Dep't of Corr.*, No. 3:24CV227 (VAB), 2024 WL 5112001, at *3 (D. Conn. Dec. 13, 2024) (reviewing Amended Complaint despite its deficiencies under Rule 8), dismissal of this case, along with granting leave to file a proper amended pleading, appears to be the only way available to ensure compliance both with the Federal Rules of Civil Procedure, and this Court's multiple Orders. *See Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases."); *see also Kumaran v. Nat'l Futures Ass'n,* No. 120CV03668GHWSDA, 2023 WL 9603881, at *3-4 (S.D.N.Y. Dec. 20, 2023) (recommending the dismissal of the second amended complaint, and leave to replead where the complaint "is almost two hundred pages long and contains over a thousand paragraphs," "remains replete with ambiguous, vague and conclusory allegations, and where the court was "mindful that this is not [plaintiff's] first encounter with the strictures of Rule 8."), *report and recommendation adopted sub nom. Kumaran v. Kadlec*, No. 1:20-CV-3668-GHW, 2024 WL 3448107 (S.D.N.Y. July 9, 2024).

Accordingly, the Fourth Amended Complaint will be dismissed, and an amended pleading, a Fifth Amended Complaint, will only be permitted on the failure to decontaminate claim, and against the Defendants specifically identified further below.

**B. The First Amendment Retaliation Claims**

To state a cognizable First Amendment retaliation claim, Mr. Jordan must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (quotation omitted). Mr. Jordan's allegations satisfy some, but not all, of these requirements.

The Court infers from Mr. Jordan's Fourth Amended Complaint that his alleged placement in the RHU and allegedly rough treatment from prison officials while there, stemmed from filing a grievance against Captain Correia and Lieutenant Colella, after these officers accused Mr. Jordan of "[h]arassing their women" in the medical and mental health departments. *See* ECF No. 27 at 33.

Filing a grievance constitutes protected speech. *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (filing a lawsuit or grievance is constitutionally protected activity that will support a retaliation claim); *Stewart v. Ayala*, No. 3:20-CV-1938 (CSH), 2022 WL 4356467, at *8 (D. Conn. Sept. 20, 2022 (protected speech or activity includes "filing a lawsuit, an administrative complaint, or a prison grievance"). Thus, Mr. Jordan's grievance filed against Captain Correia and Lieutenant Colella meets the first requirement.

Mr. Jordan also arguably meets the second requirement—that the defendant took adverse action against the plaintiff—by alleging that Captain Correia and Lieutenant Colella, among others, sprayed an "enormous amount of chemicals," ECF No. 37 at 38, into Mr. Jordan's cell. *See, e.g.*, *Gulley v. Ogando*, No. 3:19-CV-612 (SRU), 2019 WL 2502753, at *7 (D. Conn. June 17, 2019) (collecting cases) (plaintiff's allegation that correctional officer's "use of physical force arguably constitutes an adverse action" for purposes of second prong of retaliation claim).

Mr. Jordan fails to allege, however, facts meeting the third requirement—that there was a causal connection between the protected speech and the adverse action.

"To show a causal connection between Plaintiff's previous federal lawsuit [or grievance] and the adverse action, he would have to state facts suggesting that the protected conduct was a substantial or motivating factor in the prison official's decision to take action against [him]." *Lewis v. Stango*, No. 3:22-CV-1248 (OAW), 2023 WL 4684666, at *6 (D. Conn. July 21, 2023) (quotation marks omitted; first alteration added). This requires a plaintiff to "show some evidence of retaliatory intent to cause the adverse effect." *Brandon*, 938 F.3d at 40. "Some of the facts often used to determine retaliatory motive include (1) temporal proximity between the protected conduct and the alleged retaliatory act, (2) the prisoner's prior good disciplinary record, (3) a finding of not guilty at the disciplinary hearing, and (4) statements by the officials showing motivation." *Ramos v. Semple*, No. 3:18-CV-1459 (VAB), 2019 WL 2422875, at *2 (D. Conn. June 10, 2019). A defendant may "avoid liability by showing that he or she would have taken the adverse action 'even in the absence of the protected conduct.'" *Brandon*, 938 F.3d at 40 (quotation omitted).

Mr. Jordan has failed to allege facts showing "retaliatory intent to cause the adverse effect," *Brandon*, 938 F.3d at 40, under the factors described in *Ramos*. Mr. Jordan filed his grievance against Captain Correia and Lieutenant Colella on December 17, 2021. *See* ECF No. 27 at 33. These officers did not spray pepper spray into Mr. Jordan's cell until January 24, 2022, *id.* at 38, more than one month later.

The Fourth Amended Complaint contains no allegations that Mr. Jordan had a "prior good disciplinary record." In fact, the pepper spraying incident occurred in the RHU after officials had issued disciplinary reports to Mr. Jordan for self-mutilation, threats, and "safety and

security." *Id.* at 37. Mr. Jordan does not allege that he was not found "not guilty" at a disciplinary hearing. And, he has asserted no allegations that officials made statements showing a retaliatory motivation. *Cf. Johnson v. Naqvi*, No. 3:18-CV-694 (CSH), 2021 WL 1723773, at *6, 9 (D. Conn. Apr. 29, 2021) (concluding there was an "apparent nexus" between correctional officer's strip search of plaintiff and his previous lawsuits against DOC officials where officer told plaintiff that he was being strip searched "since you like filing lawsuits.").

Mr. Jordan's Fourth Amended Complaint thus fails to allege a non-conclusory or non-speculative causal connection between Mr. Jordan's rejected grievance and Captain Correia and Lieutenant Colella's later actions of spraying Mr. Jordan with pepper spray. Mr. Jordan alludes throughout his Fourth Amended Complaint that his initial placement in the RHU was a "set up," ECF No. 27 at 37, and that officers' treatment of him once there was motivated by something other than an interest in maintaining the safety and security of the prison. *See, e.g.*, *id.* at 28 (describing in the introduction the "multiple dynamics" Mr. Jordan believes motivated prison staff's conduct, including staff being in relationships with one another and conflicts of interest). But these allegations are conclusory. *See, e.g.*, *id.* (" . . . the Plaintiff, being victimized, persecuted, and targeted, and brutalized and tortured for over a week involving several departments, that makes up the D.O.C. structure, being; administration; Medical; Mental health; Security (Custody); and the few upper echelon of the D.O.C., who were aware of and or made aware of the actions of these, rogue, agents, contractors, and employees.").

The day before officers sprayed Mr. Jordan with pepper spray, he had covered his cell window, made threats to harm himself and the officers who had placed him in the RHU, and had to be placed in restraints until the following morning. *Id.* at 36–37. Once released from these restraints, Mr. Jordan again covered the window of his cell. *Id.* at 37. Captain Correia and

Lieutenant Colella allegedly sprayed Mr. Jordan with chemical spray only after Mr. Jordan refused to uncover his cell window and only after officers warned him that they would use pepper spray on him. *Id.* at 38.

And there are no allegations sufficient to suggest that Captain Correia and Lieutenant Colella (in concert with other officers) would have pepper sprayed Mr. Jordan's cell "even in the absence of the protected conduct," *id.* (quotation marks omitted), because, as alleged by Mr. Jordan, these officers deployed the chemical spray after they "attempted to get [Mr. Jordan] to take down the covering from window [sic], and [he] refused," *id.*,[5] not in retaliation for a grievance Mr. Jordan had filed over a month earlier. *See, e.g.*, *Pluma v. City of N.Y.*, No. 13 CIV. 2017 LAP, 2015 WL 1623828, at *8 (S.D.N.Y. Mar. 31, 2015) (finding lack of "causal connection between . . . [protected] activity and the deployment of pepper spray" because complaint "fail[ed] to allege any motivation related to specific protected speech behind the officers' decision to push the barricade and deploy pepper spray" against protesters).

Mr. Jordan has also failed to allege facts showing that adverse actions taken by other Defendants were retaliatory. Mr. Jordan only identifies his grievance filed against Captain Correia and Lieutenant Colella on December 17, 2021. ECF No. 27 at 33. "The Second Circuit as well as other district courts within the Circuit have observed that 'it is difficult to establish one defendant's retaliation for complaints against another defendant.'" *Dixon v. Lupis,* No. 3:20CV1754 (VLB), 2021 WL 4391246, at *9 (D. Conn. Sept. 24, 2021) (cleaned up; collecting cases). Mr. Jordan thus has failed to allege any non-conclusory facts showing that other staff

---

[5] Courts in this District have recognized that "when a prisoner covers his cell window for a prolonged period of time, that act conflicts with the prison's duty to maintain safety and security." *Sherman v. Corcella,* No. 3:19-CV-1889 (CSH), 2020 WL 4035064, at *6 (D. Conn. July 16, 2020).

14

even knew about the grievance filed against Captain Correia and Lieutenant Colella, let alone retaliated against Mr. Jordan in response to it.

To the extent that prison staff allegedly retaliated against Mr. Jordan because he was harassing women in the medical and mental health departments, *see* ECF No. 27 at 33, his harassment of staff members is not protected speech, *Williams v. Walter Ford*, No. 3:14-CV-1181 (VAB), 2015 WL 8490910, at *5 (D. Conn. Dec. 10, 2015) (collecting cases) (noting, "as a general matter, the First Amendment does not protect threatening or harassing speech."), in satisfaction of the first requirement for a First Amendment retaliation claim.[6] *Brandon*, 938 F.3d at 40. As a result, even if correctional officers took adverse action against Mr. Jordan in response to his harassment of other prison employees, these facts cannot support an actionable claim under the First Amendment.

Accordingly, any First Amendment claim will be dismissed for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1).

### C. The Excessive Force Claims

The use of excessive force against a prisoner can constitute cruel and unusual punishment in violation of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 4 (1992); *accord Wilkins v. Gaddy*, 559 U.S. 34, 36 (2010) (per curiam). The "core judicial inquiry" is not "whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7).

---

[6] For this reason, any claim alleging that Mr. Jordan had a First Amendment right to harass staff, *see* ECF No. 27 at 33, also fails. Moreover, any claim that denial of Mr. Jordan's grievance violated his rights under the First Amendment, *see* ECF No. 27 at 20, 39, 63, also fails. *See Lopez v. McGill*, 2009 WL 179787, at *5-6 (D. Conn. Jan. 31, 2009) (citing cases) (denial of access to, or violation of, grievance procedures does not violate constitutionally protected right such as right to petition government for redress of grievances).

To state a claim for use of excessive force, a plaintiff must allege facts showing that, subjectively, the defendant acted maliciously or sadistically to cause harm rather than in a good-faith effort to maintain or restore discipline. *Hudson*, 503 U.S. at 6–7 ("[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."). To evaluate the defendant's conduct, the Court considers various factors including the extent of the injuries and the mental state of the inmate; "the need for application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendant[ ]; and any efforts by the defendant[ ] to temper the severity of a forceful response." *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks omitted) (citing *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993)).

Mr. Jordan must also show, objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262–63 (2d Cir. 1999) (internal quotation marks omitted) (citing *Hudson*, 503 U.S. at 8). A *de minimis* use of force will rarely be sufficient to satisfy the objective element unless that force is also "repugnant to the conscience of mankind." *Wilkins*, 559 U.S. at 38 (quoting *Hudson*, 503 U.S. at 9–10). It is the force used, not the injury sustained, that "ultimately counts." *Id.* A malicious use of force constitutes a per se Eighth Amendment violation because "contemporary standards of decency are always violated." *Blyden*, 186 F.3d at 263 (quoting *Hudson*, 503 U.S. at 9).

Mr. Jordan alleges several uses of force, but none can be considered "excessive" under the exacting standard above. Mr. Jordan first alleges correctional officers used force on him on January 23, 2022, when officers escorted him to the Restrictive Housing Unit ("RHU") "by use

of unnecessary force." ECF No. 27 at 34. Mr. Jordan also claims that officers "used force to put [him] in the cell," "stripped [him] by force," "forced [him] down to [his] knees," made him lean forward, "forced [him] up," and then "with force put [his] clothing back on." ECF No. 27 at 35.

These conclusory allegations of "force," which are no more than "a formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, do not support a claim for excessive force. *See, e.g.*, *Westry v. City of Waterbury*, No. 3:22CV686 (MPS), 2023 WL 3259878, at *4 (D. Conn. May 4, 2023) (concluding that "Westry does not allege any facts in support of his [excessive force] claim. He simply asserts that Rose used excessive force and that Westry was injured." (bracketed material added)).

Moreover, officers employed force only after Mr. Jordan refused to submit to a strip search[7] before entering the RHU. Thus, as alleged by Mr. Jordan, the force was "applied in a good-faith effort to maintain or restore discipline," not "maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37. *See, e.g.*, *Vasquez v. Cnty. of Rockland*, No. 13 CIV. 5632 (SLC), 2020 WL 883514, at *9 (S.D.N.Y. Feb. 24, 2020) (concluding officers' used of force was not unconstitutionally excessive because "it was 'applied in a good faith effort to maintain or restore discipline' by extracting Vasquez from the D-Wing, where he had caused a disturbance, and relocating him to a segregated cell" (quoting *Hudson*, 503 U.S. at 6)).

Mr. Jordan next alleges officials placed him in various restraints in the RHU. *See* ECF No. 27 at 37. The use of restraints may, in some cases, constitute excessive force. *See Ferraresso v. Town of Granby*, 646 F. Supp. 2d 296, 306 (D. Conn. 2009) (noting that "overly tight

---

[7] To the extent Mr. Jordan claims officers' strip search of him before he entered the RHU was unconstitutional, this claim fails. *See, e.g.*, *Nourse v. Cnty. of Jefferson*, No. 17-CV-0807 (BKS/DJS), 2018 WL 2185504, at *3 (N.D.N.Y. May 11, 2018) (citing *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 329) (noting that "[t]he Supreme Court held that the jails' policies, which permitted strip searches during the intake process, even without reasonable suspicion of concealed contraband, did not violate inmates' constitutional rights.").

handcuffing can constitute excessive force." (quotation omitted)). When reviewing an excessive

for claim stemming from the use of restraints, "the court must consider the individual

circumstances surrounding the use of restraints, including the length of time restraints were

imposed and the objective sought to be served." *Davis v. Rinaldi*, No. 3:19-CV-504(CSH), 2019

WL 7879729, at *10 (D. Conn. Oct. 31, 2019) (quotation omitted). Maintaining prison order and

security is a legitimate penological objective. *Smith v. Barone*, No. 3:20CV794(VLB), 2021 WL

917118, at *6 (D. Conn. Mar. 10, 2021). Thus, using restraints to achieve that objective, without

more, is not a constitutional violation. *Shehan v. Erfe*, No. 3:15-cv-1315(MPS), 2017 WL 53691,

at *9 (D. Conn. Jan. 4, 2017); *Wells v. Stafford*, No. 3:13-cv-1349(RNC), 2015 WL 1471597, at

*3 (D. Conn. Mar. 31, 2015) (whether use of restraints can be considered use of excessive force

depends on the reason restraints were applied).

Mr. Jordan allegedly was placed in "full stationary restraints . . . . for four hours." ECF

No. 27 at 37. Then Mr. Jordan allegedly was placed in in-cell restraints and "B.O.S." until he

saw a mental health provider the following day. *Id.* But officers only allegedly placed Mr. Jordan

in these restraints after he "started slamming [his] head on the door window," "covered his cell

window out of protest," and "made threats of getting/harming those [who] [were] setting [him]

up, then killing [him]self." ECF No. 27 at 36–37. While true that Mr. Jordan was placed in

restraints for a long time, he fails to allege that the prison officials restrained him for reasons

other than to maintain prison order and security, a legitimate penological objective. *Smith*, *supra*,

at *6. Thus, without more, restraining Mr. Jordan under the circumstances he describes does not

amount to a constitutional violation. *Shehan*, *supra*, at *9.

Mr. Jordan further alleges that officers sprayed him with pepper spray on two occasions.

The use of a chemical agent against a *compliant* inmate is considered a use of excessive force.

*See Hinton v. Pearson*, No. 3:21-cv-863 (MPS), 2021 WL 4521994, at *6 (D. Conn. Oct. 4, 2021).

But courts within this District have determined that use of a chemical agent is an acceptable means of gaining control of a *disruptive* inmate. *See cf. Davis v. Rinaldi*, No. 3:19-CV-504 (CSH), 2019 WL 7879729, at *12 (D. Conn. Oct. 31, 2019) ("In connection with the administration of a chemical agent, it is unclear whether Plaintiff was unruly or disruptive by the time that McCreary appeared during the Incident. . . . Taking Plaintiff's claim as true that more chemical agent than needed was used against him, though, the Court finds that he states a plausible claim for relief.); *Johnson v. Schiff*, No. 17-CV-8000 (KMK), 2019 WL 4688542, at *19 (S.D.N.Y. Sept. 26, 2019) ("As to the alleged July 2013 pepper spray incident, while the use of a single burst of a chemical agent, which is not a dangerous quantity, is a constitutionally acceptable means of controlling an unruly or disruptive inmate, here, Plaintiff squarely alleges that he was fully cooperative, that Minckler and Gray were on the other side of the cell bars (and thus not plausibly in danger), and that the pepper spray was intentionally sprayed directly into Plaintiff's eyes and face and onto his hair, causing him excruciating pain that lasted for two weeks. This is sufficient.") (internal citation and quotation marks omitted).

*Gulley v. Hall*, No. 3:15cv962(MPS), 2017 WL 1078630, at *6–7 (D. Conn. Mar. 21, 2017) (use of chemical agent against inmate who covered cell window and refused orders to remove covering and leave cell did not constitute excessive force); *Carolina v. Pafumi*, No. 3:12-cv-163(VLB), 2013 WL 1673108, at *8–10 (D. Conn. Apr. 17, 2013) (use of chemical agent to subdue noncompliant inmate did not constitute excessive force); *Alston v. Butkiewicus*, No. 3:09-cv-207(CSH), 2012 WL 6093887, at *13–15 (D. Conn. Dec. 7, 2012) (use of chemical agent did not constitute excessive force when inmate refused to comply with direct orders).

Mr. Jordan was disruptive on both occasions in which officers sprayed pepper spray into his cell. During the first incident, Mr. Jordan had covered his cell window "out of protest." ECF No. 27 at 37. Officers allegedly sprayed pepper spray into Mr. Jordan's cell only after he refused to remove the covering from the window. *Id.* at 38. During the second incident, Mr. Jordan allegedly also covered his cell window and the cell door "trap" with a mattress. *Id.* at 42. Officers allegedly sprayed pepper spray into Mr. Jordan's cell only after he refused to remove the covering. *Id.* at 43. Because, on both occasions, officers sprayed pepper spray into Mr. Jordan's cell only after he refused to uncover his cell window, the use of pepper spray is not necessarily excessive under the Eighth Amendment. *See, e.g.*, *Gulley*, *supra*, at *7 (because "plaintiff disregarded repeated orders and all efforts of correctional staff . . . to persuade him to remove the window obstruction, the court conclude[d] that deploying a chemical agent in singular bursts into the plaintiff's cell on three separate occasions constituted force that was necessary to restore order and ensure the safety and security of the plaintiff, his cellmate and prison staff.").

Finally, Mr. Jordan also alleges that officers placed him in in-cell restraints after spraying him with pepper spray during the first incident and placed him in stationary restraints after spraying him with pepper spray during the second incident. *See* ECF No. 27 at 39, 44. But because, on both occasions, prison officials allegedly restrained Mr. Jordan to maintain prison order and security, a legitimate penological objective, *see Smith*, *supra*, at *6, this use of restraints, without more, does not amount to a constitutional violation. *Shehan*, *supra*, at *9.

Nevertheless, the Court will allow this excessive force claim, insofar as it is related to pepper spraying, to proceed to discovery and address it at a later stage of this case.

Accordingly, any Eighth Amendment excessive force claim related to the pepper-spraying of Mr. Jordan will proceed.

## D.    The Deliberate Indifference Claims

To state a cognizable Eighth Amendment claim for deliberate indifference to a prisoner's medical needs, the prisoner must show that "(1) objectively, the alleged deprivation of medical care was 'sufficiently serious,' and (2) subjectively, that a defendant acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'" *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006)). The prisoner must allege facts to suggest that a defendant acted not merely carelessly or negligently, but with a subjectively reckless state of mind akin to criminal recklessness. *See, e.g.*, *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). "Officials need only be aware of the risk of harm, not intend harm. And awareness may be proven from the very fact that the risk was obvious." *Spavone*, 719 F.3d at 138.

### i. The Failure to Decontaminate Claim

"Injuries or pain resulting from being sprayed with mace sufficiently establish the existence of a serious medical need deserving of medical attention." *El-Massri v. New Haven Corr. Ctr.*, No. 3:18-CV-1249 (CSH), 2018 WL 4604308, at *9–10 (D. Conn. Sept. 25, 2018) (quotation omitted). Mr. Jordan's allegation that the pepper spray caused him "severe pain and anguish," ECF No. 27 at 39, and that he "scream[ed]" in "tortuous pain," *id.* at 53, while somewhat vague and conclusory, satisfies the objective element that he suffered from serious medical needs. *See, e.g.*, *Santos v. N.Y.C. Dep't of Correction*, No. 08 Civ. 8790 (GBD) (THK), 2010 WL 1142066, at *7 (S.D.N.Y. Feb. 25, 2010) (prisoner established a "serious medical need" where he was sprayed in the face with a fire extinguisher, causing, *inter alia*, "extreme

pain").

Mr. Jordan's allegation that correctional officers placed him in in-cell restraints instead of providing medical attention to him, ECF No. 27 at 39, 44, satisfies the subjective element of his deliberate indifference claim. *See, e.g.*, *Al-Bukhari v. Semple*, No. 3:16-CV-1428 (SRU), 2017 WL 2125746, at *4 (D. Conn. May 16, 2017) (prisoner stated Eighth Amendment claim for deliberate indifference to serious medical needs by "alleg[ing] that he informed the correctional officers and nurses that he was suffering from extreme pain as a result of being sprayed with a chemical agent and the staff repeatedly denied his requests for an adequate shower to clean himself and decontaminate the agent.").

Accordingly, having sufficiently alleged both elements, Mr. Jordan's deliberate indifference to serious medical needs claim will be dismissed now, but may be raised again in a Fifth Amended Complaint, not encumbered with any other claims.

### ii. The Denial of Medication Claim

Denial of medication may sometimes satisfy the objective requirement of a deliberate indifference claim. *See, e.g.*, *Carilli v. Semple*, No. 3:19-CV-01922 (JAM), 2021 WL 2515799, at *22 (D. Conn. June 19, 2021) (observing that "[t]he denial of pain medication may rise to the level of sufficient seriousness to satisfy the objective prong of the deliberate indifference standard in some circumstances.").

Courts in this Circuit have concluded, however, that "denial of a single dose, or even several doses, of a needed medication is insufficient, without more, to establish a serious delay in treatment under the Eighth Amendment." *Schlosser v. Carter*, No. 3:20-CV-434 (SRU), 2021 WL 1124280, at *9 (D. Conn. Mar. 24, 2021) (citing *Smith v. Carpenter*, 316 F.3d 178, 188–89 (2d Cir. 2003) (affirming denial of motion for new trial for Eighth Amendment violation where

plaintiff "presented no evidence that the two alleged episodes of missed medication resulted in permanent or on-going harm to his health"); *Youngblood v. Artus*, 2011 WL 6337774, at *18 (N.D.N.Y. Dec. 19, 2011) (granting motion to dismiss deliberate indifference claim where the defendant "failed to give [the plaintiff] a single dose of his seizure medication" and the plaintiff did not specify any resulting harm); *Bumpus v. Canfield*, 495 F. Supp. 2d 316, 322 (W.D.N.Y. 2007) (dismissing claim of deliberate indifference based on "a delay of several days in dispensing plaintiff's hypertension medication" absent evidence that "the delay gave rise to a significant risk of serious harm"); *Evans v. Bonner*, 196 F. Supp. 2d 252, 256 (E.D.N.Y. 2002) (granting summary judgment for defendant on claim that medication was not timely distributed even where plaintiff alleged that he had suffered "aches, pains and joint problems" due to withdrawal because "the alleged injury to the plaintiff resulting from not getting his medicine on time does not rise to a sufficiently serious level.")).

Mr. Jordan has failed to assert any non-conclusory allegations that the brief denial of medication after he returned to Cheshire from the hospital endangered his health. Mr. Jordan intimates that the lack of medication precipitated a mental health breakdown that later led to him being harmed, *see* ECF No. 27 at 18 (alleging that denial of medication "cause[d] him to decompose"), but, as even he has alleged, he exhibited the same behavior before he complained of a lack of medication. *See id.* at 36–37.

Accordingly, because Mr. Jordan fails to draw a causal connection between his lack of medication and his mental health breakdown, a brief denial of medication, by itself, cannot rise to a constitutional violation, this claim will be dismissed. *See Schlosser*, *supra*, at * 9 (collecting cases).

### F.    The Failure to Intervene Claim

"To state a claim for a prison official's failure to intervene, a plaintiff must allege facts showing that: '(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) [the officer knew] that the victim's constitutional rights were being violated; and (3) the officer [did] not take reasonable steps to intervene.'" *Deegan v. Doe #1*, No. 3:19CV1356(MPS), 2019 WL 5964816, at *3 (D. Conn. Nov. 13, 2019) (quotation omitted; bracketed material original). "Liability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit collaborator' in the illegality." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988)).

Mr. Jordan alleges that several prison officials failed to intervene by standing by while other officers sprayed pepper spray into his cell during both cell extractions. *See* ECF No. 27 at 38, 50–51. But these allegations cannot form the basis for a failure to intervene claim because even if these officers "had a realistic opportunity to intervene and prevent the harm" and "did not take reasonable steps to intervene," they could not have known that Mr. Jordan's "constitutional rights were being violated." *Deegan*, *supra*, at *3 (brackets and quotation marks omitted). As described above, officers' deployment of pepper spray into Mr. Jordan's cell was not unconstitutional. As a result, Mr. Jordan's failure to intervene claim likely fails. *See Hardy v. Daly*, 748 F. App'x 379, 381 (2d Cir. 2018) (noting "[t]here can be no failure to intervene . . . where there was no constitutional violation" (quotation omitted)).

Nevertheless, because the Court has decided to permit his excessive force claim to go forward for now, his failure to intervene claim also will proceed for now.

Accordingly, Mr. Jordan's failure intervene claim will proceed.

**G.     The ADA and RA Claims**

24

Mr. Jordan alleges that prison officials' conduct violated his rights under the Americans with Disabilities Act "ADA" and Rehabilitation Act "RA." The standards under Title II of the ADA and §504 of the RA "are generally the same[.]" *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir.  2016).[8] And the ADA and the RA both apply to state prisons and prisoners.  *Wright*, 831 F.3d at 72.

To establish a prima facie violation under the ADA or the RA, a plaintiff must show: "that 1) he is a qualified individual with a disability; 2) [defendants are] entit[ies] subject to the acts; and 3) he was denied the opportunity to participate in or benefit from [defendants'] services, programs, or activities or [defendants] otherwise discriminated against him by reason of his disability." *Wright*, 831 F.3d at 72. There are "three available theories[ ]" of discrimination that can be used to establish the third prong of an ADA and RA claim: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord,* 591 F.3d 37, 43 (2d Cir. 2009).

Even if Mr. Jordan was a qualified individual under the ADA and RA (element 1) based on his mental health conditions, *see* ECF No. 27 at 57, and Cheshire was subject to the ADA and RA (element 2), he has failed to alleged "he was denied the opportunity to participate in or benefit from [defendants'] services, programs, or activities or [defendants] otherwise discriminated against him by reason of his disability" (element 3). *Wright*, 831 F.3d at 72. Mr. Jordan does not allege that he was denied participation in any service, program, or activity

---

[8] The only difference between the ADA and RA is that the RA applies to entities receiving federal financial assistance while Title II of the ADA applies to all public entities, a distinction not relevant here. *See Messier v. Southbury Training Sch*., 562 F. Supp. 2d 294, 320 & n.13 (D. Conn. 2008); *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (finding it proper to consider such claims together). The "distinctions between the statutes are not implicated in this case," so "'we treat claims under the two statutes identically.'" *Wright*, 831 F.3d at 72 (quoting *Henrietta D*., 331 F.3d at 272).

because of any disability. Nor does Mr. Jordan allege that the prison discriminated against him

under any of the three theories described by the Second Circuit in *Fulton.*

Accordingly, these claims will be dismissed for failure to state a claim upon which relief

can be granted under 28 U.S.C. § 1915A(b)(1). *See Elbert v. New York State Dep't of Corr.*

*Servs.*, 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010) ("Courts routinely dismiss ADA suits by

disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was

treated differently because of his or her disability.").

### H.    The Conspiracy Claim

To state a claim for conspiracy under § 1983, a plaintiff must allege: (1) an agreement

between two or more state actors or between a state actor and a private entity; (2) to act in

concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal

causing damages. *See Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002);

*Alejandro v. Quiros*, 2021 WL 5324905, at *5 (D. Conn. 2021). Mr. Jordan fails to allege any

non-conclusory or non-speculative facts suggesting an agreement between others or that others

were acting in concert in furtherance of that agreement. As a result, his allegations are

insufficient to state a conspiracy claim under § 1983. *See Ciambriello*, 292 F.3d at 325

("[C]omplaints containing only conclusory, vague, or general allegations that the defendants

have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly

dismissed."); *Lewis v. Slaiby*, 2024 WL 1241937, at *3 (D. Conn. 2024) (same).

Mr. Jordan alleges throughout his Fourth Amended Complaint that officials conspired

together to violate his constitutional rights. *See, e.g.*, ECF No. 27 at 27, 40, 73 (describing "at

least 48 defendants" as "intentionally collaborat[ing], and/or conspir[ing]" to violate Mr.

Jordan's constitutional rights and describing defendants as "working in concert to persecute [him]" or being "part of some conspiracy").

Mr. Jordan's allegations are likewise insufficient to state a claim for conspiracy under 42 U.S.C. §§ 1985, 1986. To state a claim for conspiracy under 42 U.S.C. § 1985(3)[9], a plaintiff must allege "1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d. Cir. 2015) (quoting *Britt v. Garcia*, 457 F.3d 264, 269 n.4 (2d Cir. 2006)). A § 1985 conspiracy must be motivated by "some racial or perhaps otherwise class-based" discriminatory animus. *Id.* (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007)).

Under 42 U.S.C. § 1986, a plaintiff can bring a claim against an individual who, "having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do." 42 U.S.C. § 1986. "Thus a § 1986 claim must be predicated upon a valid § 1985 claim." *Thomas v. Roach*, 165 F.3d 137, 147 (2d Cir. 1999).

Mr. Jordan has not alleged facts establishing a conspiracy, for reasons described in the Court's analysis of his § 1983 conspiracy claim. As a result, any conspiracy claim under § 1985

---

[9] Section 1985 has three subsections. Section 1985(1) relates to conspiracies to prevent federal officials from performing their duties and has no relevance to the facts of this case. Section 1985(2) concerns conspiracies intending to "any party or witness" from "attending court or from testifying" in order to "influence the verdict" of a case, and also has no relevance to the alleged facts. Section 1985(3) applies to conspiracies to deprive a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws. *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015).

fails. Because "a § 1986 claim must be predicated upon a valid § 1985 claim," *Thomas*, 165 F.3d at 147, any conspiracy claim under § 1986 also fails.

Accordingly, Mr. Jordan's ADA and RA claims will be dismissed for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1).

## I.    The Remaining Claims

Mr. Jordan mentions several other potential violations of his rights throughout his complaint without explaining the basis for these claims sufficient to provide Defendants notice of them. *See, e.g.*, ECF No. 27 at 27–29 (making passing references in "Introduction" section to Title V of the Mental Health Systems Act, attempted murder, assault and battery, violation of medical privacy laws, violations under "U.S. Const. 1st, 4th, 8th, 13th, and 14th Amendments," and "conditions of confinement").

But a "[m]ere passing reference to constitutional amendments and statutes is insufficient to state a claim under such provisions." *Gawlik v. Quiros*, No. 3:21CV01549(SALM), 2022 WL 2065042, at *2 n.4 (D. Conn. June 8, 2022) (citing *Yates v. Cunningham,* No. 08CV06346(MAT), 2013 WL 557237, at *6 (W.D.N.Y. Feb. 12, 2013) ("[M]ere passing reference to a constitutional amendment is plainly insufficient to state a claim upon which relief may be granted."); *Tasaka v. Bayview Loan Servicing, LLC*, No. 17CV07235(LDH)(ST), 2022 WL 992472, at *8 (E.D.N.Y. Mar. 31, 2022) ("[T]he amended complaint is rife with passing references to statutes that have no connection to the alleged facts. Plaintiff simply has not pleaded any facts that would provide Defendants with notice of the grounds for a claim under most of the statutes cited in the amended complaint." (citation omitted)); *Murray v. Orange Cnty.*, No. 18CV00442(NSR), 2020 WL 3450782, at *4 (S.D.N.Y. June 23, 2020) ("Other than to make a passing reference to several statutes . . . Plaintiff fails to assert any factual allegations

in support of such claims. More than mere labels, conclusions, or formulaic recitation of the elements of claim is required to assert a plausible claim."). Nonetheless, the Court will briefly address some of those claims here.

Mr. Jordan claims officers violated his rights by "bullying" or "threatening" him. ECF No. 27 at 5–6. Mr. Jordan also alleges some defendants acted "unprofessional[ly]." *See, e.g.*, *id.* at 27. But "[i]t is well-settled that verbal harassment and threats do not rise to the level of a constitutional violation." *Trowell v. Theodarakis*, No. 3:18CV446(MPS), 2018 WL 3233140, at *2 (D. Conn. July 2, 2018) (citing *Cole v. Fischer*, 379 Fed.Appx. 40, 43 (2d Cir. 2010) ("Verbal harassment, standing alone, does not amount to a constitutional deprivation."); *Cuoco v. Moritsugu,* 222 F.3d 99, 109 (2d Cir. 2000) (noting that "rudeness and name-calling does not rise to the level of a constitutional violation"); *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (holding that verbal harassment and name calling, absent physical injury, are not constitutional violations cognizable under § 1983); *Cotz v. Mastroeni*, 476 F. Supp. 2d 332, 372 (S.D.N.Y. 2007) (holding that verbal harassment and threats, regardless of how inappropriate, unprofessional or reprehensible, do not violate a federally protected right and are not cognizable under section 1983)). And even "disgusting, offensive and highly unprofessional conduct does not rise to the level of a constitutional tort." *Quezada v. Roy*, No. 14 CIV. 4056 CM, 2015 WL 5970355, at *23 (S.D.N.Y. Oct. 13, 2015). Thus, these claims are unavailing.

Mr. Jordan also alleges that prison officials violated DOC Administrative Directives or OSHA.[10] *See* ECF No. 27 at 72–73. "Defendants' failure to comply with prison regulations or administrative directives does not constitute a basis for relief under Section 1983 because 'violation of a prison regulation or policy does not establish that the official has violated the

---

[10] The Court liberally construes Mr. Jordan's claim of "unlawful detention," ECF No. 27 at 27, as being based on prison officials' failure to place him in the RHU in accordance with Administrative Directives.

Constitution or is liable to a prisoner under 42 U.S.C. § 1983.'" *Pena v. Czeremcha*, No. 3:24-CV-938 (SVN), 2024 WL 4388277, at *11 (D. Conn. Oct. 2, 2024) (citing *Fine v. UConn Med.*, No. 3:18-CV-530 (JAM), 2019 WL 236726, at *9 (D. Conn. Jan. 16, 2019) (citation omitted); *see also Garcia v. Dep't of Corr.*, No. 3:22-CV-1328 (SVN), 2023 WL 8114212, at *9 (D. Conn. Nov. 22, 2023) (holding that plaintiff could not state a claim arising from prison officials' alleged violation of an "Administrative Directive or other policy")). And "OSHA does not create a private cause of action." *Jelenic v. Campbell Plastics*, 159 F.3d 1347 (2d Cir. 1998) (citing 29 U.S.C. § 660(c)).

Accordingly, all other claims will be dismissed for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1).

### J.    The Types of Relief Available

To the extent that Mr. Jordan asserts official capacity claims for monetary damages against any individual defendant (all state employees), such claims are dismissed as barred by the Eleventh Amendment. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985). To the extent that Mr. Jordan seeks damages against DOC, Mr. Jordan may not sue DOC for damages. *See Collins v. Brito*, No. 3:19-CV-874 (JAM), 2019 WL 6839554, at *2 (D. Conn. Dec. 16, 2019) (concluding that "the DOC is not a 'person' within the meaning of section 1983, 'and thus may not be sued pursuant to this statute regardless of whether a state has waived its sovereign immunity.'" (quotation omitted)). Thus, the Court considers only whether Mr. Jordan has sufficiently alleged claims against any individual defendant in his or her individual capacity for damages.

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v.*

*Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (noting "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). This is true with respect to supervisory officials, as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").

The only claims that would have proceeded, but for this case's dismissal was Mr. Jordan's Eighth Amendment deliberate indifference claim related to prison officials' failure to decontaminate Mr. Jordan after pepper spraying him, and the related excessive force and failure to intervene claims. Mr. Jordan has alleged personal involvement of certain individuals who used excessive force in pepper-spraying him, failing to intervene in the pepper-spraying of him, or failing to decontaminate him. These officials are Nurse Jane Ventrella, Captain Correia, Lieutenant Colella, Officers Rivera, Tardiff, Marquis, and Salgado, and Dr. Wolf, ECF No. 37–39 (first incident), Officers Hunter, Haggerty, Casserino, Gourley, Izzo, L.P.N. Brennan, and R.N. Maiya, *id.* at 48–53 (second incident), and Lieutenant Rios and Officers Martin, Pitts, Viski, and Cheney. *Id.* at 9–11, 14–15, 17 (mentioned in description of defendants as failing to decontaminate Mr. Jordan or provide "medical care" to him). If this case would have proceeded, Mr. Jordan could have pursued damages from these Defendants in their individual capacities.

But Mr. Jordan may not pursue injunctive relief against these defendants. "A plaintiff may not obtain injunctive relief against a state official in [his] individual capacity." *Taylor v. Dorantes*, No. 3:19CV01350(JCH), 2019 WL 13293562, at *4 (D. Conn. Oct. 16, 2019). And "[a] plaintiff may proceed for injunctive or declaratory relief against a defendant in his or her official capacity only to the extent he alleges an ongoing constitutional violation." *Bey v.*

*Megget*, No. 3:24-CV-1258 (SVN), 2025 WL 27463, at *6 (D. Conn. Jan. 3, 2025). Here, Mr. Jordan alleges no facts suggesting an ongoing constitutional violation.

Accordingly, Mr. Jordan, if he decides to file a Fifth Amended Complaint, may only proceed on a claim for damages against Nurse Jane Ventrella, Captain Correia, Lieutenant Colella, Officers Rivera, Tardiff, Marquis, and Salgado, and Dr. Wolf, Officers Hunter, Haggerty, Casserino, Gourley, Izzo, L.P.N. Brennan, and R.N. Maiya, , and Lieutenant Rios and Officers Martin, Pitts, Viski, and Cheney, but not for injunctive or declaratory relief against these Defendants or any other Defendant.

## IV. CONCLUSION

For the reasons discussed above, the Fourth Amended Complaint is **DISMISSED** without prejudice to the filing of a Fifth Amended Complaint by **August 8, 2025,** seeking damages against the following Defendants identified in the Fourth Amended Complaint in their individual capacities on his Eighth Amendment deliberate indifference claim related to their alleged failure to decontaminate Mr. Jordan after he was pepper sprayed: Nurse Jane Ventrella, Captain Correia, Lieutenant Colella, Officers Rivera, Tardiff, Marquis, and Salgado, and Dr. Wolf, Officers Hunter, Haggerty, Casserino, Gourley, Izzo, L.P.N. Brennan, R.N. Maiya, Lieutenant Rios, Officers Martin, Pitts, Viski, and Cheney. He also may pursue again in a Fifth Amended Complaint, at least for now, his excessive force and the related failure to intervene claims.

This is Mr. Jordan's final opportunity to file an amended pleading in this case. If his Fifth Amended Complaint contains anything other than the allegations necessary to support these three claims, the Eighth Amendment deliberate indifference claim, and the excessive force and related

to failure to intervene claims described above, and discussed further below, then that Fifth

Amended Complaint in its entirety will be dismissed with prejudice.

All other claims are **DISMISSED with prejudice**.

The Clerk of Court is respectfully directed to enter judgment on behalf of the following

Defendants: Department of Correction, Jennifer Reis, Pierce, Carlos Nunez, C.O. Milling, James

Watson, Richard Wauthier, Brian Lapila, C.O. Brewer, C.O. Cosette, Lieutenant Saas, C.O.

Guerrera, Lisa, Dr. Jane Doe, R.N. Jane Doe, Lieutenant Torres, D.A. Rodriguez, Lieutenant

Calendar, Reis, Nunnez, Watson, Wauthier, Lapila, Cossette, Nicollette, Miranda, Barefoot,

Captain Calo, Ovittore, Bryant, Borrrero, Jane, D.A. Rodriguez, Quintero, Angel Quiros, Maxine

Cartwright, and Jennifer.

Dated this 3rd day of July, 2025 at New Haven, Connecticut.

/s/ Victor A. Bolden

Victor A. Bolden
United States District Judge